UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                        Case No. 00-CR-194

YERIDA AVILA-PERALTA,

        Defendant.

_____

## ORDER

This matter comes before the court on a petition for a *writ of error coram nobis* filed on behalf of the defendant, Yerida Avila-Peralta. The petition has been fully briefed, and the matter is now ready for decision.

## PROCEDURAL BACKGROUND

On October 3, 2000, a grand jury sitting in this district returned a 3 count indictment charging 16 defendants, including Yerida Avila-Peralta, with offenses related to drug trafficking. Specifically, Avila-Peralta was charged in count one with conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. On December 19, 2000, the same grand jury returned a superceding indictment charging the defendants with 29 additional counts. Avila-Peralta was again named in count one as a co-conspirator as well as charged in count eleven with possession with the intent to distribute cocaine. On

October 29, 2001, a written plea agreement was filed with the court along with a single count information which charged the defendant with possession with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Pursuant to the terms of the plea agreement, Avila-Peralta and the government agreed to resolve the pending charges contained in the superceding indictment through entry of a plea of guilty to the information. In exchange, the government agreed to dismiss the more serious charges contained in the superceding indictment at the time of sentencing.

On November 9, 2001, Ms. Avila-Peralta pleaded guilty to one count of possession with the intent to distribute marijuana, a felony, in violation of 18 U.S.C. §§ 841 (a)(1) and 841 (b)(1)(d).[1] On January 18, 2002, Ms. Avila-Peralta was sentenced to 3 years of probation. Ms. Avila-Peralta is a legal resident of the United States, and in December 2001, she applied to become a United States citizen. This application was motivated by advice she received from her then attorney, Mr. David Lang, that if she filed for citizenship prior to her sentencing, she would be able to avoid deportation. In June of 2004, Ms. Avila-Peralta received notice from the Immigration and Naturalization Service (INS) that her application for citizenship would be denied due to her 2001

---

[1] On November 7, 2001, a change of plea hearing was held before this court; however, due to a misunderstanding as to the parties' official agreement, the hearing was aborted and rescheduled for November 9, 2001.

conviction, and that she was deportable pursuant to Sections 237 (a)(2)(A)(iii) and 237 (a)(2)(B)(i) of the Immigration and Nationality Act. On May 27, 2005, Ms. Avila-Peralta, through new counsel Erich Straub, filed a petition for a *writ of coram nobis* in this court, requesting that the court vacate her conviction and at the same time allow her to withdraw her guilty plea.

### A N A L Y S I S

Pursuant to the All Writs Act, a federal court may grant writs such as *coram nobis* that were traditionally available only at common law. *See* 28 U.S.C. § 1651(a)(2005). A *writ of coram nobis* alleges an error of fact or law, and it is pursued as a remedy when the petitioner is no longer in custody. *See United States v. Morgan*, 346 U.S. 502, 511 (1954). The *writ of coram nobis* has been categorized as "an extraordinary remedy," and should be issued "only under circumstances compelling such action to achieve justice." *Id.*

A petitioner for a *writ of coram nobis* must bring her motion in the court that entered the judgment for the underlying conviction. *See United States v. Esgobue*, 357 F.3d 532, 534 (5th Cir. 2004)(stating that a lower court wrongfully dismissed for lack of jurisdiction when a petitioner met the substantive requirements for *coram nobis* relief and properly filed the writ in the court that originally entered judgment against him). This court entered judgment against Ms. Avila-Peralta on

January 23, 2002; therefore, Ms. Avila-Peralta has met this threshold procedural requirement.

Additionally, under the modern application of a *writ of coram nobis*, a petitioner must satisfy four (4) requirements. First, that a more usual remedy is not available; second, that valid reasons exist for not attacking the conviction earlier; third, that adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of U.S. Const. art. III; and fourth, that there is an error of the most fundamental character. *See e.g.*, *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)(setting forth the four requirements for *coram nobis* relief). These requirements will be discussed below in the context of Ms. Avila-Peralta's petition for a *writ of coram nobis*.

Courts have held that a petitioner may satisfy the first requirement by asserting that they are no longer in custody, thereby making more traditional writs such as habeas corpus or federal custody remedies under 28 U.S.C. § 2255 unavailable. *See e.g., United States v. Kwan*, 407 F.3d 1005, 1012 (9th Cir. 2005)(setting forth that when a petitioner is "no longer in custody, this first requirement is satisfied"). Ms Avila-Peralta is able to satisfy the first requirement because she has served her 3 year probation sentence, thus rendering alternative remedies unavailable. Writs of *coram nobis* are unique in the sense that the

petitioner's sentence generally needs to be expired, and because Ms. Avila-Peralta's sentence expired in January 2005, she is able to satisfy this first requirement.

Next, Ms. Avila-Peralta must provide valid reasons for not attacking her conviction at an earlier date. Courts have noted that although there is not a specific statute of limitations for *coram nobis* relief, such a writ needs to be brought without "unreasonable delay." *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994). Courts generally do not define "delay" as a specific time period; rather, courts will look to whether the petitioner has evidenced "diligence" in addition to considering the potential prejudice to the government. *See United States v. Moore,* 166 F.2d 102, 105 (7th Cir. 1954) (considering diligence on the part of the petitioner in addition to the potential prejudice suffered by the government).

Ms. Avila-Peralta's sentence expired in January of 2005, and her motion for *writ of coram nobis* was filed in May of 2005; thus, 5 months had passed between the time her sentence expired and when she filed her motion. She learned of her possible deportation in June of 2004, and brought her *writ of coram nobis* approximately 11 months later. Ms. Avila-Peralta's 11 month "delay" is a far cry from the several year delays in which courts have denied *coram nobis* relief. *See e.g., Maghe v. United States*, 710 F.2d 503, 504 (9th Cir. 1983) (holding that a 25 year

delay absent any reason); *see also Klein v. United States*, 880 F.2d 250, 254 (10th Cir. 1989)(holding a 7 year delay unreasonable due to the petitioner offering no valid explanation coupled with the prejudice that would be suffered by the government). Ms. Avila-Peralta is also a mother who works multiple jobs, thus, bringing her motion within one year of learning of her potential deportation could likely be seen as "diligent."

Even if Ms. Avila-Peralta is able to evidence due diligence on her part of bringing her *writ of coram nobis*, the government may be able to assert that the delay is nevertheless unreasonable because of the prejudice it would suffer. Courts have acknowledged the rather obvious fact that an extensive delay will often result in pertinent evidence or records being destroyed, thus making it difficult for the government to bring forth information that would undermine the petitioner's request. For example, in *Telink, Inc. v. United States,* the Seventh Circuit held that a delay of 7 years was unreasonable because one government witness died, it would be difficult and expensive to reassemble the government's database, and the government's prosecution team had been disassembled; thus the court determined that the government would suffer substantial prejudice. *Telink, Inc. v. United States*, 24 F.2d 42, 48 (7th Cir. 1994).

However, Ms. Avila-Peralta's case is distinguishable from *Telink, Inc.* The period of time seems, at the very least, reasonable in the context of "delay" for filing a *writ of coram nobis*. Additionally, Ms. Avila-Peralta's file is well-preserved, both in electronic and hard-copy form, and the government did not set forth any facts in its response to Ms. Avila-Peralta's motion that it would suffer prejudice due to lost or destroyed evidence. Therefore, because Ms. Avila-Peralta was not aware of the fundamental error underlying her case until June of 2004, and subsequent to that acted with due diligence to avoid an unreasonable delay, she has satisfied the second requirement.

The third requirement Ms. Avila-Peralta must meet is to show that she has suffered lasting and adverse consequences from the conviction. The adverse consequence that Ms. Avila-Peralta is asserting is the possibility of deportation. *U.S. v. Kwan* stated that it was "undisputed" that deportation is an "adverse consequence" to satisfy this requirement. *Kwan*, 407 F.3d at 1014. Other courts have agreed with such a result. *See e.g., United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004)(finding that deportation satisfies the "adverse consequence" requirement to justify *writ of coram nobis* petition). Therefore, Ms. Avila-Peralta is able to satisfy the requirement of asserting lasting adverse consequences.

Lastly, Ms. Avila-Peralta must assert a "fundamental error." The fundamental error Ms. Avila-Peralta points to is ineffective assistance of counsel in violation of the Sixth Amendment. Courts have held that a finding of ineffective assistance of counsel will satisfy this last requirement in a motion for a *writ of coram nobis*. *Kwan*, 407 F.3d. at 1014.

To satisfy a finding of ineffective assistance of counsel, Ms. Avila-Peralta must assert that her attorney's representation did not meet the objective standards of reasonableness, and that she was prejudiced by his deficient performance. *See Strickland v. Washington*, 446 U.S. 668, 687 (1984). In the context of guilty pleas, prejudice is shown by the petitioner setting forth with reasonable probability, that but for the attorney's errors, the petitioner would not have pleaded guilty. *Hill v. Lockhard,* 474 U.S. 52, 59 (1985). This inquiry is to be framed not by hindsight, but as an evaluation of the attorney's conduct at the time. *Strickland,* 446 U.S. at 688-91.

In the realm of ineffective assistance of counsel, courts have distinguished between simply failing to inform a client on a particular matter, and affirmatively *mis*informing a client on a particular matter in their case. *See e.g. United States v. Cuoto*, 311 F.3d 179, 187 (2nd Cir. 2002) (acknowledging the distinction between failing to inform and affirmatively misinforming). Simply not informing a client

of potential deportation consequences, without more, will not rise to the level of ineffective assistance of counsel as it "does not fall below an objective standard of reasonableness." *Id; see also United States v. Santelises*, 509 F.2d 703, 704 (2nd Cir. 1975). However, "an affirmative misrepresentation by counsel as to deportation consequences of a guilty plea is today objectively unreasonable . . . [and] such a misrepresentation meets the first prong of the *Strickland* test." *Cuoto*, 311 F.3d at 188.

While Ms. Avila-Peralta may be able to meet the first prong of the *Strickland* test, she must also establish with reasonable probability, that but for Mr. Lang's errors, she would not have pleaded guilty. In Ms. Avila-Peralta's affidavit accompanying her motion for a *writ of coram nobis*, she asserts that she was very concerned about the risk of deportation throughout the time that her then-attorney, Mr. David Lang, was representing her. When her charge of possession of cocaine with the intent to distribute was amended to the possession of marijuana with the intent to distribute, Mr. Lang informed her that she was no longer subject to deportation with the charge as amended. He further informed her that if she filed an application for citizenship prior to her sentencing date, she would be "fine." Ms. Avila-Peralta asserts that based upon this information from Mr. Lang, she pleaded guilty in November of 2001 to the charge as amended and applied for citizenship one month later. Her affidavit further asserts that she was

"desperate to avoid deportation" and "shocked" when the INS informed her she was deportable because her attorney had informed her otherwise.

While the government categorizes Ms. Avila-Peralta's affidavit as "self-serving," it nevertheless may satisfy the standard of "reasonable probability" that but for the misinformation of her attorney, she would not have pleaded guilty. Throughout her affidavit, she continually asserts her strong desire to avoid deportation. Additionally, she explicitly followed her attorney's advice on how to avoid deportation by filing her application for citizenship prior to her sentencing date; perhaps further evidencing not only a reliance on misinformation, but also bolstering the fact that her ultimate goal was to avoid deportation. Considering these circumstances, it is reasonably probable that Ms. Avila-Peralta would not have pleaded guilty without Mr. Lang's misinformation.

The government disagrees with this result. The government urges the court to consider the fact that she has failed to show that she would have "insisted on going to trial," and also that she has not claimed her innocence regarding her conviction. However, Ms. Avila-Peralta is not required, under the *Strickland* standard as interpreted by *Cuoto* and *Kwan* courts, to assert that she would have insisted on a trial, and that she would have prevailed at trial; she only needs to establish that but for the affirmative misinformation from her attorney, it was

reasonably probable that she would not have entered a guilty plea. *See Cuoto*, 311 F.3d at 188; *see also Kwan*, 407 F.3d at 1015.

For the reasons stated above, Ms. Avila-Peralta has established the necessary requirements to qualify for *writ of coram nobis* relief. Accordingly,

IT IS ORDERED that the petition be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that the conviction as to the single count information be and the same is hereby VACATED;

IT IS FURTHER ORDERED that the offenses charged in counts one and eleven of the superceding indictment are hereby REINSTATED;

IT IS FURTHER ORDERED that the Clerk of the Court randomly reassign this matter to another branch of the court for purposes of trial.

Dated at Milwaukee, Wisconsin, this __5th__ day of July, 2005.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge